25CA0914 Preston v Flesher 08-13-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0914
Arapahoe County District Court No. 24CV64
Honorable Thomas Henderson, Judge

James Preston,

Plaintiff-Appellant,

v.

Dustin Flesher,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE WELLING
Tow, C.J., and Lipinsky, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 13, 2026

James Preston, Pro Se

No Appearance for Defendant-Appellee

¶ 1     In this defamation suit, plaintiff, James Allen Preston, appeals the district court's judgment in favor of defendant, Dustin Flesher. We affirm.

## I.     Background

¶ 2     In 2023, Flesher and Preston's wife, Keola Preston (Keola),[1] were embroiled in a custody dispute over their child. During a custody hearing, Flesher testified that Preston was hostile, was aggressive, and had violent tendencies. The court granted Flesher primary custody of the child.

¶ 3     Preston brought this defamation case against Flesher based on Flesher's in-court statements about Preston, as well as emails and texts that Flesher sent to Preston, Keola, and district court staff.

¶ 4     In his complaint, Preston alleged that the purportedly defamatory statements caused him $75,000 in "actual damages" and $75,000 in "compensatory damages," *see Lira v. Davis*, 832 P.2d 240, 241 n.1 (Colo. 1992) (using the terms "actual damages" and "compensatory damages" interchangeably), and he sought an

---

[1] Because plaintiff and Keola share the same last name, we will refer to plaintiff by his last name (Preston) and to Keola by her first name. We do so for clarity and mean no disrespect.

additional $100,000 in punitive damages.  Preston attributed his actual damages to "pain and suffering" and the compensatory damages to a lack of sleep, unnecessary stress, and anxiety attacks, as well as time spent seeking legal support.  At trial, Preston claimed that Flesher's statements caused him to "lo[se] custody of [his] child," to pay excessive supervised visitation fees, and to incur $22,500 in legal fees.  It's unclear from the record whether Preston provided any evidence of his claimed damages.[2]

¶ 5    In advance of the bench trial, Preston filed a motion asking the district court to find Flesher in contempt of court for intimidating, retaliating against, and tampering with a witness — Keola's mother. In his motion and at trial, Preston argued that Flesher called Keola's mother and threatened to withhold access to her grandchild if she testified at trial.  Preston also requested that the district court impose sanctions on Flesher for his conduct — such as barring Flesher from contacting any of his witnesses and reporting Flesher's conduct to law enforcement — and that it allow Keola's mother to

---

[2] The only receipts or invoices included in the appellate record are for $46 for service of the complaint in this case and for $849.75 for filing the trial transcript with this court.

provide her testimony through an affidavit or deposition. The district court denied Preston's motion "without prejudice" — expressly allowing him to pursue criminal charges as he saw fit — and declined to impose sanctions.

¶ 6    Following the bench trial, the district court entered a detailed written order finding in favor of Flesher on every defamation claim.

## II.    Discussion

¶ 7    Preston raises nine issues on appeal,[3] only three of which are preserved. The preserved issues are Preston's contentions that the district court (1) erroneously failed to address his claim that Flesher tampered with a witness; (2) incorrectly applied absolute immunity to statements Flesher made outside open court; and (3) erroneously failed to award him damages and costs in connection with his defamation claims. We first dispose of Preston's unpreserved claims, then turn to his preserved contentions.

---

[3] Preston also separately contends that the alleged errors amounted to reversible cumulative error. "The doctrine of cumulative error, although applied regularly in criminal appeals, has not been extended to civil cases," however. *Acierno v. Garyfallou*, 2016 COA 91, ¶ 66.

3

## A. Preston's Unpreserved Contentions

¶ 8 We begin by noting that Preston's opening brief — the only brief filed in this case — doesn't fully comply with the Colorado Appellate Rules. Parties are required to direct us to "the precise location in the record where the issue was raised and where the court ruled." C.A.R. 28(a)(7)(A). Despite certifying that his brief complied with C.A.R. 28 and seemingly providing record citations to where he preserved his arguments, none of Preston's record citations actually direct us to where he allegedly preserved those arguments. Instead, these record citations direct us to random spots in the record, completely unrelated to what is being argued on appeal.[4] "When a party does not point us to where an issue was raised and resolved, he 'place[s] the burden of searching the records on us' — a search we are not required to undertake." *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1186 (Colo. App.

---

[4] For example, while the transcript for the May 2, 2025, bench trial is only 158 pages long, Preston twice claims he preserved arguments on pages beyond that page number. Another example includes a citation to one of Preston's pretrial statements to claim preservation of an argument about post-judgment relief.

2011) (quoting *O'Quinn v. Baca*, 250 P.3d 629, 631 (Colo. App. 2010)).

¶ 9    Due to our inability to locate where they were preserved, we won't address the following contentions:

1.    The district court erred by excluding evidence of Flesher's criminal history.

2.    Preston's rights were violated by "unequal evidentiary treatment and judicial partiality."

3.    The district court was biased and engaged in misconduct.

4.    The district court erroneously denied Preston's motion for post-judgment relief based on newly discovered evidence.

5.    Flesher's pursuit of a post-trial protection order against Preston violated Preston's due process rights.

6.    The district court judge was required to recuse himself.[5]

---

[5] We consider this argument to be in a different class from the other unpreserved arguments because Preston doesn't provide any sort of record citation to where he preserved this argument. To the contrary, Preston recognizes that this argument is unpreserved and argues that the district court judge was required to recuse himself sua sponte, without Preston bringing the issue to his attention. This argument is indisputably unpreserved, and Preston's failure to raise it first in the district court is fatal to this contention on appeal. *See Lucero v. People*, 409 P.2d 278, 279 (Colo. 1965).

¶ 10    Now we turn to Preston's preserved contentions.

## B.    Tampering With a Witness

¶ 11    Preston first contends that the district court erred by failing to rule on his motion requesting that the court (1) find Flesher in contempt for witness tampering by calling Keola's mother; (2) impose sanctions on Flesher for doing so; and (3) allow Keola's mother to testify through an affidavit or a deposition. We review a district court's rulings on contempt, whether to impose sanctions, and the admissibility of evidence — including whether to admit evidence by affidavit or deposition — for an abuse of discretion. *In re Marriage of Davis*, 252 P.3d 530, 537 (Colo. App. 2011); *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010); *Maloney v. Brassfield*, 251 P.3d 1097, 1106 (Colo. App. 2010). A district court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or is based on a misapplication or misunderstanding of the law. *Mosley v. Daves*, 2025 COA 80, ¶ 47 (*cert. granted* June 29, 2026).

¶ 12    We disagree with Preston's characterization of the record. The district court did address Preston's motion. The district court considered Flesher's contention that Preston allegedly engaged in

6

misconduct and determined that no sanctions were warranted. Indeed, the court noted that no order or rule prohibited Flesher from contacting any witness in the case. Finally, the court denied Preston's motion without prejudice, expressly allowing him to pursue criminal charges if he saw fit. Simply put, we discern no abuse of discretion on the part of the district court in denying Preston's motion and declining to impose sanctions. Moreover, because Preston told the court that he wasn't planning on calling Keola's mother as a witness, we can't discern that any prejudice resulted from the court's alleged failure to impose sanctions. *See* C.R.C.P. 61 (providing that we must disregard as harmless any error that doesn't affect a party's substantial rights).

## C.    Defamation

¶ 13    We address Preston's final two contentions together. Preston's second contention is that the district court incorrectly applied absolute immunity to certain allegedly defamatory statements that Flesher made when he wasn't testifying in a judicial proceeding. Preston's third contention is that the district court more broadly erred by declining to award him damages on his defamation claims. We construe these contentions together as an argument that the

7

district court generally erred by ruling against him on his defamation claims. As discussed below, we conclude that the district court properly disposed of all of Preston's defamation claims.

### 1. Additional Facts

¶ 14 Besides the statements that Fletcher made in open court, Preston alleged that six categories of communication constituted defamation:

1. Various allegedly defamatory statements contained in emails that Flesher sent directly to Preston.

2. Two text messages that Flesher sent to Keola containing the following allegedly defamatory statements:

   - "Why is your boy friend [sic] at my job trying to harass me?"

   - "And he was here yesterday, trying to get me fired."

3. Three emails that Flesher sent to Keola containing the following allegedly defamatory statements:

   - "Tell [Preston] to call me."

   - "And your silly girl friend [sic] is trying to sue me?"

   - "I'm not afraid of you or your silly man friend."

8

4. Allegedly defamatory statements contained in a voicemail that Flesher left for Keola (the voicemail):[6] "I'd really, really appreciate it if you'd stop telling a bunch of god-damned lies about me, and telling my family all this ridiculous abusive BS that you're making up. It's really not going to bode well when we go to court. When you're talking about trying to sue me for defamation, I don't think it's a good idea to run around and be telling everybody that I'm doing all kinds of crazy erroneous garbage when I'm not. The evidence is — the proof is in the pudding. It's all there bud; all there — woo; it's all there — woo!"

5. An email dated April 4, 2025, that Flesher sent to the trial judge's judicial assistant explaining why he couldn't confer with Preston regarding the joint trial management certificate (April 4 email) and containing the following allegedly defamatory statement: "There's an active

---

[6] The recording of the voicemail isn't part of the appellate record. The only record we have of the voicemail is from the district court's order of judgment.

9

restraining order on [the] other party, so I don't think we can confer."

6.   An email dated April 6, 2025, that Flesher sent to the trial judge's judicial assistant inquiring about the consequences of failing to confer with Preston regarding the joint trial management certificate (April 6 email), containing the following allegedly defamatory statements: "What will happen if this [conferral] is not completed. This person has zero reason to be suing me. And has attempted to kidnap my son and has made false reports against me as well as showing up at my place of employment spreading detrimental false information and harassing me. He's purchased and place[d] Apple AirTags in my son's stuffed animal and backpack. And this person has nothing that can prove any impact on his life from any of my life. We do not know each other, as far as I'm concerned he's just a very confused and misinformed individual. We have zero ability to communicate, nor do I want or need any contact with this delusional person. I just want to be left alone, btw I

10

have full custody of my son which [Preston] is married to my son[']s mom, and this is starting to effect [sic] my son[']s life.  Just for clarification."

¶ 15    The district court found that the statements Flesher made as a witness during his custody hearing and the statements in the April 6 email were protected by absolute immunity and were therefore not subject to civil liability.  Specifically, the district court found the April 6 email absolutely immune because it contained "statements to the [district court] in the context of an ongoing lawsuit, which are absolutely privileged."

¶ 16    As for the rest of the statements, the district court found that they were either not about Preston, made only to Preston (and therefore not published), or not defamatory.

## 2.    Standard of Review and Law

¶ 17    Whether a statement is defamatory is a question of law that we review de novo.  *Fry v. Lee*, 2013 COA 100, ¶ 20.

¶ 18    Defamation is a communication that holds an individual up to contempt or ridicule, thereby causing them to incur injury or damage.  *Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo. 1994).  To prevail on a defamation claim, a plaintiff must generally prove four

11

elements: (1) a defamatory statement concerning the plaintiff; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the statement's publication. *Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 85; *McIntyre v. Jones*, 194 P.3d 519, 523-24 (Colo. App. 2008).

¶ 19 There are two types of defamatory statements: Statements that are defamatory per se and statements that are defamatory per quod. *Keohane v. Wilkerson*, 859 P.2d 291, 301 (Colo. App. 1993), *aff'd sub nom.*, *Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994).

¶ 20 "A statement may be considered defamatory per se if it is specifically directed at the person claiming injury and, on its face and without extrinsic proof, it is unmistakably recognized as injurious." *Id.* As such, a court must be able to determine that the statement is defamatory by examining the statement "alone, without the aid of inducements, colloquialisms, innuendos, [or] explanatory circumstances." *Id.* Historically, a statement is defamatory per se if it imputes (1) a criminal offense; (2) a

12

loathsome disease; (3) a matter incompatible with the individual's business, trade, or profession; or (4) serious sexual misconduct. *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004). A party isn't required to plead or prove special damages for statements that are defamatory per se. *Keohane*, 859 P.2d at 301.

¶ 21    In contrast, statements that require innuendo or extrinsic evidence to establish their defamatory nature are, at most, defamatory per quod. *Id.* A plaintiff asserting that a statement is defamatory per quod must not only prove that the statement is defamatory, but must also plead and prove special damages from its publication. *Id.* "'Special damages' are limited to specific monetary losses, if any, which a plaintiff incurs as the result of publication of statements or pictures by a defendant." *Lind v. O'Reilly*, 636 P.2d 1319, 1321 (Colo. App. 1981). Special damages *don't* include injuries to a plaintiff's reputation or feelings that don't result in specific monetary losses. *Id.*

¶ 22    With these concepts in mind, we turn to Preston's contention that the trial court erred by finding in favor of Flesher on all of Preston's defamation claims.

### 3. Application

¶ 23    The statements Preston challenges on appeal can be organized into five categories based on how the district court ruled on them: (1) statements Flesher made to only Preston; (2) Flesher's statements that weren't about Preston; (3) statements that the district court found were protected by absolute immunity; (4) statements that were, at most, defamatory per quod; and (5) statements that were potentially actionable as defamation per se. We address the allegedly defamatory statements in that order.

#### a. Statements Made to Preston

¶ 24    First, the statements made to Preston include all the emails that Flesher sent to Preston. An essential element of *any* defamation claim is that the statement be "published" to a third party — someone other than the plaintiff or defendant. *Denv. Publ'g Co. v. Bueno*, 54 P.3d 893, 899 (Colo. 2002). Colorado has codified the publication requirement in section 13-25-125.5, C.R.S. 2025 ("No action for libel or slander may be brought or maintained unless the party charged with such defamation has published, either orally or in writing, the defamatory statement to a person other than the person making the allegation of libel or slander."). In other words,

14

without publication to a third party, a defamation claim necessarily fails.

¶ 25 Because Flesher didn't include third parties in his emails to Preston, these statements weren't published. Based on its finding that the statements weren't published, the district court correctly concluded that they couldn't constitute a basis for a defamation claim.

b. Statements Not About Preston

¶ 26 Second, the district court found that the voicemail Flesher left for Keola didn't contain any statements about Preston. In the voicemail, Flesher expressed his belief that "you" (i.e., Keola) were spreading lies. Because the voicemail didn't contain any statements concerning Preston, he doesn't have an actionable defamation claim based on it. *See Coomer*, ¶ 85 ("To prevail on a claim of defamation, a plaintiff . . . must prove" there was "a defamatory statement *concerning the plaintiff*." (emphasis added)). Therefore, the district court correctly concluded that the voicemail couldn't support a defamation claim.

### c. Absolutely Immune Statements

¶ 27    The district court found that Flesher's statements made in his capacity as a witness in the underlying custody case and the statements that he made to the judge's judicial assistant in the April 4 and April 6 emails were absolutely privileged. Whether a party has a right to absolute immunity is a question of law that we review de novo. *Churchill v. Univ. of Colo.*, 293 P.3d 16, 25 (Colo. App. 2010), *aff'd*, 2012 CO 54.

¶ 28    "Under common-law principles, an individual who is an integral part of the judicial process is provided absolute immunity from subsequent civil damages liability." *Hoffler v. Colo. Dep't of Corr.*, 27 P.3d 371, 373 (Colo. 2001). "The class of absolutely privileged communications is necessarily narrow and is generally limited to situations that involve legislative, judicial, and quasi-judicial proceedings, and other acts of state." *Williams v. Boyle*, 72 P.3d 392, 400 (Colo. App. 2003).

¶ 29    This absolute immunity extends to statements made by witnesses when testifying at trial. *Hoffler*, 27 P.3d at 374; *Wagner v. Bd. of Cnty. Comm'rs*, 933 P.2d 1311, 1312 (Colo. 1997). Therefore, the statements Flesher made about Preston while

16

testifying at the custody hearing are absolutely immune, and thus, the district court properly concluded that they couldn't support a defamation claim.

¶ 30    The April 4 and April 6 emails that Flesher sent to the judge's judicial assistant are similarly immune. Allegedly defamatory statements made outside of a judicial proceeding that "have some relation to the subject matter of the litigation"; that are "made in furtherance of the objective of litigation," *Franklin D. Azar & Assocs. P.C. v. Ngo*, 2024 COA 99, ¶ 40; and that are "integral to the judicial process" enjoy absolute immunity under the litigation privilege, *Patterson v. James*, 2018 COA 173, ¶ 20. Although Colorado courts only discuss this litigation privilege in the context of statements made by attorneys, *see Azar*, ¶ 39; *Patterson*, ¶ 19; *Coomer*, ¶ 186; *Killmer, Lane & Newman, LLP v. BKP, Inc.*, 2023 CO 47, ¶ 21, we see no reason (and Preston offers us none) why such privilege doesn't extend to statements made by a pro se party in the course of representing himself. Instead, what matters is whether such statements have a connection to the litigation. *Azar*, ¶ 40 ("[A] statement must satisfy two conditions for the privilege to apply: (1) the statement must have some relation to the subject matter of

17

the litigation, and (2) the statement must be made in furtherance of the objective of the litigation." (citing *Killmer, Lane & Newman*, ¶ 24)). And the district court concluded, with record support, that the statements contained in these emails were absolutely immune because they were "statements to the [district court] in the context of an ongoing lawsuit." Indeed, Flesher sent both emails to the judicial assistant seeking clarification regarding his obligation to confer on the preparation of a joint trial management certificate. Accordingly, the district court didn't err by concluding that the April 4 and April 6 emails are protected by absolute immunity.

### d. Defamation Per Quod Claims

¶ 31 Flesher's published statements about Preston that weren't protected by absolute immunity are actionable as defamation per quod only if they were defamatory *and* caused Preston special damages. *See, e.g.*, *Bernstein v. Dun & Bradstreet, Inc.*, 368 P.2d 780, 782 (Colo. 1962) ("[I]n Colorado special damages are a necessary element of a claim in defamation when the alleged defamatory remarks are libelous per quod."). To put a sharper point on it, if Preston failed at trial to establish special damages, then we must affirm the district court's rejection of Preston's

18

defamation per quod claims regardless of whether such statements may have been defamatory. *See Keohane*, 859 P.2d at 301 (holding that a plaintiff asserting a claim of defamation per quod "must plead and prove special damages" to prevail on such a claim (citing *Bernstein*, 368 P.2d at 782)); *see also Migoya v. Wheeler*, 2024 COA 124, ¶ 40 ("[W]e may affirm the court's decision on any ground supported by the record.").

¶ 32    Generally, blanket statements of incurring monetary damages without more specific proof are insufficient to prove special damages. *See Lind*, 636 P.2d at 1321 (plaintiff's claims that emotional distress caused by defamatory statements led him to make poor investment decisions and thus less profit, without more, were insufficient to prove special damages). As previously discussed, Preston *alleged* in his complaint that he suffered $250,000 in damages. We, however, don't see — nor does Preston direct us to — where in the record he presented any evidence of these alleged damages or how such alleged damages related to the purported defamatory statements. And our review of the record reveals that Preston failed to present any evidence at trial that he suffered any special damages due to any of the allegedly defamatory

19

statements.  Accordingly, the trial court properly denied all of Preston's defamation per quod claims (without regard to whether any individual statement could have been understood as defamatory).

#### e.     Defamation Per Se Claims

¶ 33     Based on the analysis above, the *only* defamation claims on which Preston could have potentially succeeded at trial were for defamation per se.  *See Keohane*, 859 P.2d at 301.  And the only basis for asserting that any of the alleged defamatory statements were defamatory per se was that Flesher accused Preston of committing a crime in the statements.  *See Gordon*, 99 P.3d at 79 (setting forth the four categories of defamation per se, which include "imputation of . . . a criminal offense"); *Arrington v. Palmer*, 971 P.2d 669, 671 (Colo. App. 1998) ("A statement is defamatory per se if it imputes a criminal offense.").  And the only published, nonprivileged allegedly defamatory statement that could even potentially constitute defamation per se is Flesher's email to Keola asking, "Why is your boy friend [sic] at my job trying to harass me?" *See* § 18-9-111, C.R.S. 2025 (criminal harassment statute).  *But cf. People v. Moreno*, 2022 CO 15, ¶¶ 19-20 (holding that the phrase

20

"intended to harass" as used in the criminal harassment statute, section 18-9-111(1)(e), is "unconstitutionally overbroad" because it sweeps in too much constitutionally protected conduct that can't be criminalized).

¶ 34    This statement fails to qualify as defamation per se because it's not clear on the statement's face that it's an accusation of any criminal conduct. While harassment can be a misdemeanor if specific elements are proved beyond a reasonable doubt, the word "harassment" also has a more colloquial meaning that doesn't necessarily imply criminal conduct. Merriam-Webster Dictionary defines "harass" as including "to annoy persistently" and to exhaust or fatigue. Marriam-Webster Dictionary, https://perma.cc/364M-CVG2; *see also Moreno,* ¶¶ 19-20 (discussing the breadth of the definition of the word "harassment"); *People v. Hickman*, 988 P.2d 628, 642 (Colo. 1999) (noting that "[t]he term 'harassment' is synonymous with 'vex,' 'trouble,' or 'annoy'" (quoting Webster's Third New International Dictionary 1031 (1986))). It's unclear from Flesher's statement *alone* if he meant the criminal meaning or the colloquial, noncriminal meaning of harassment. Because we are unable to determine if this statement is defamatory without

extrinsic evidence, it isn't defamatory per se. *See Keohane*, 859 P.2d at 301 ("A statement may be considered defamatory per se if . . . on its face and without extrinsic proof, it is unmistakably recognized as injurious.").

### III. Disposition

¶ 35     For the foregoing reasons, we affirm the district court's judgment.

CHIEF JUDGE TOW and JUDGE LIPINSKY concur.